CLARKE REALTY, INC., A CORPORATION AND WILLIAM J. LANGEN *v.* JAMES T. CLARKE AND NANCY L. DOWNEY.

[No. 3-874A141. Filed September 29, 1976. Rehearing denied December 1, 1976. Transfer denied April 19, 1977.]

---

*Kenneth D. Reed, Abrahamson, Reed and Tanasijevich,* of Hammond, for appellants.

*Richard F. Benne, Wilson, Benne & Donnersberger,* of Hammond, for appellees.

STATON, P.J.—The Lake Superior Court denied the petition of Clarke Realty Corporation for injunctive relief. The petition of the Corporation sought to enjoin James T. Clarke, a former president of the Corporation and its manager, and Nancy Downey, a secretary working with Clarke in the management of the Corporation, from conducting corporate business and from controlling the possession of the corporate offices and books. After Clarke and Downey had surrendered the

corporate offices and books, a court trial was held on the petition, and injunctive relief was denied by the Lake Superior Court. The Corporation appeals the denial of its petition for injunctive relief as not being supported by sufficient evidence and as contrary to law. After reviewing the evidence, we conclude that the judgment of the Lake Superior Court denying injunctive relief to the Corporation should be affirmed.

Prior to May 24, 1969, Clarke had owned or had controlled through options all of the shares of Clarke Realty, Inc. On May 24, 1969, he entered into a written agreement with Clarke Realty, Inc. and Summit Development Corporation which provided for the sale of his majority interest in Clarke Realty to Summit. The agreement also contained a provision for Clarke to manage the real estate business of Clarke Realty through the year 1974. Without any further written agreement, Clarke managed the real estate business from 1969 until he was dismissed by the Corporation's new president on November 2, 1972.

Injunctive relief is essentially for protection from future or threatened injury. *Elder* v. *City of Jeffersonville* (1975), 164 Ind. App. 422, 329 N.E.2d 654. While the extent of Clarke's participation in the Corporation's business affairs after his dismissal on November 2, 1972 is unresolved by the record, it is clear that both he and Downey had voluntarily surrendered possession of the corporate books and premises before the commencement of the trial. Hence, the likelihood of future injury to the Corporation was slight. Furthermore, the Corporation's contention that managerial contracts are not subject to specific performance by the manager is inappropriate in terms of the injunctive relief it seeks. Its notice of termination to Clarke was an attempt to breach an employment contract. Injunctive relief is founded upon equity principles. A remedy at law exists for a breach of contract where the terms of the contract are uncertain and vague. *Bowerman et al.* v. *First Merchants Nat. Bank of Lafayette* (1937), 211 Ind. 344, 358, 7 N.E.2d 198,

205. The granting or refusing to grant an injunction in Indiana is within the sound discretion of the trial court, and this Court on appeal will not reverse such judgment unless there has been a clear showing of abuse of discretion. Our Supreme Court has held that an abuse of discretion is:

> "'. . . an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" (Citations omitted). *Elder, supra,* at 657.

Since the Corporation's request for an injunction was inappropriate in two key particulars, no future injury and effectuating a wrongful act, its denial by the trial court was a reasonable judgment based upon the evidence as presented on the record and is not an abuse of discretion.

The bulk of the Corporation's assignment of error concerns the trial court's construction of the parties' agreement of May 24, 1964 to be an enforceable contract rather than an unenforceable agreement to agree as the Corporation contends. Especially prominent are numerous allegations that the court's Special Findings of Fact are both unsupported by sufficient evidence and contrary to evidence. It is well settled that this Court will not weigh conflicting evidence. We may consider only that evidence most favorable to the prevailing party together with all reasonable inferences to be drawn therefrom, and if from that viewpoint there is evidence of probative value to sustain the judgment of the trial court, that judgment will not be disturbed. *Langford* v. *Anderson Banking Co.* (1970), 146 Ind. App. 677, 258 N.E.2d 60.

The trial court's conclusion of law number (8) provides as follows:

> "(8)   That the evidenced produced at trial evidences that the parties, by their acts and conducts, considered that James T. Clarke was to operate and manage the business affairs of Clarke Realty, Inc., for he continued in that capacity until November, 1972. It is further evident that the parties understood that he was to receive a monthly salary

of $1,500, commission on gross sales and the use of a vehicle since all such consideration was paid by the corporation and accepted by defendant Clarke."

The Corporation's conduct subsequent to the execution of the 1969 employment agreement conforms in every particular to the agreement's rather comprehensive terms.

Where parties orally agree to make a written agreement, the terms of which are mutually understood and agreed upon, they are bound as if a contract has been executed. *International Shoe Co.* v. *Lacy* (1944), 114 Ind. App. 641, 53 N.E.2d 636.

The reciprocal exchange of rights and duties by the parties will also support the contention that the agreement constitutes a contract implied in fact.

In *Retter* v. *Retter* (1942), 110 Ind. App. 659, at 663, 40 N.E.2d 385, at 386 this explanation of an implied contract is made:

> "An implied contract, that is, one wherein an agreement is arrived at by the acts and conduct of the parties, is equally as binding as an express contract, wherein the agreement is arrived at by their words, spoken or written. In either case it grows out of the intention of the parties to the transaction. If there has been a meeting of minds and the clear intent of the parties to the transaction is evidenced by their acts and conduct viewed in the light of the surrounding circumstances, then the resultant implied contract differs from an express contract only in the mode of proof, [citing authorities]."

Since the Corporation has accepted the benefits under the agreement of receiving the majority interest of Clarke Realty stock, it is estopped to deny the existence of the contract. A party may not accept benefits and simultaneously deny liability under an agreement by contending that its terms are insufficient to constitute a completed contract. *Standard Land Corporation of Indiana* v. *Bogardus* (1972), 154 Ind. App. 283, 289 N.E.2d 803. Although the Corporation contends that the stock transfer provisions of

the agreement are severable from those pertaining to Clarke's employment, the conclusions of the trial court are not contrary to law. *Lindenborg* v. *M & L Builders and Brokers, Inc.* (1973), 158 Ind. App. 311, 302 N.E.2d 816, 824. Only in situations where the evidence is not conflicting and leads to one conclusion and the trial court reaches a contrary conclusion will that judgment be referred to as being contrary to law. *Columbia Realty Co.* v. *Harralson* (1973), 155 Ind. App. 604, 293 N.E.2d 804, 810; *Senst* v. *Bradley* (1971), 150 Ind. App. 113, 275 N.E.2d 573, 576.

We affirm.

Hoffman, J., concurs; Garrard, J., concurs in result.

NOTE—Reported at 354 N.E.2d 779.