WILLIAM E. PETERS AND FLUID CONNECTORS, LTD., INC. *v.*
DAVIDSON, INC.

[No. 1-976A173. Filed January 31, 1977. Rehearing denied March 10,
1977. Transfer denied June 9, 1977.]

*Frost & Faires,* of Indianapolis, *Parr, Richey, Obremsky & Morton,* of Lebanon, for appellants.

*Robert L. McLaughlin, David T. Stutsman, Wooden, Stark, McLaughlin & Sterner,* of Indianapolis, *Michael M. Disler, Hillis & Disler,* of Zionsville, for appellee.

ROBERTSON, C.J.—Davidson, Inc. (Davidson) filed suit against William Peters and Fluid Connectors, Inc. (Peters) seeking injunctive and monetary relief. After a hearing on Davidson's application for a preliminary injunction, the trial court entered an interlocutory order granting a preliminary injunction from which Peters appeals.

The facts of the case are that on May 3, 1971, Avels, Inc. (Avels) employed William Peters as a sales engineer. At the time of his employment, Peters and Avels entered into an employment agreement contract which contained the following restrictive covenant not to compete:

"Sales Representative covenants that he shall not, during the term of his employment or any time thereafter, disclose, divulge or use trade and manufacturing secrets, including shop drawings and prints, assembly data, application studies, engineered systems and design techniques, customer and supplier lists or any other confidential information relating to the products sold by or the business operation of Avels or its affiliates. In addition, Sales Representative further covenants that he shall not, during the term of his employment by Avels or its affiliates and for a period of one (1) year thereafter, in any territory in which he was employed by Avels or its affiliates, and any county adjacent thereto, directly or indirectly, own, manage, operate or control, or in any manner be connected with the ownership, control or operation, either as a shareholder, director, officer, employee or in any other capacity, of any organization engaged in the business of manufacturing or selling, or consulting with regard to, any products competitive to those manufactured, distributed or sold by Avels or its affiliates. Sales Representative covenants that he shall not, during the term of his employment by Avels or its affiliates and for a period of two (2) years thereafter, directly or indirectly, refer to his employment with Avels or its affiliates for any purpose which could adversely affect their busi-

ness prospects, divert or attempt to divert in any manner any business, customers or suppliers of Avels or its affiliates to himself or to any third party, hire any employee of Avels or its affiliates, or induce or attempt to induce any employee of Avels to discontinue or terminate his or her employment with Avels or its affiliates."

Peters worked for Avels until January 1, 1973. On that day, Avels merged with Dividend Leasing Co., Inc. under the Indiana General Corporation Act,[1] to form Davidson, Inc. Following the merger, Peters assumed the same position with Davidson, performing the same duties in the same territory. He remained with Davidson until he tendered his resignation on December 12, 1975.

After resigning, Peters incorporated Fluid Connectors, Ltd., Inc. on December 19, 1975. Subsequent to its incorporation, Fluid Connectors engaged in a competitive business with Davidson in the same geographical area serviced by Peters prior to his resignation. Approximately ninety percent (90%) of the purchase orders received and invoices issued by Fluid Connectors covered the identical products and customers handled by Peters while employed with Avels and Davidson.

On April 28, 1976, Davidson initiated this action against Peters. In its complaint, Davidson alleged that it acquired and assumed all rights and obligations under Peters' employment agreement when the merger occurred. Davidson further alleged that Peters breached his covenant not to compete by establishing a competitive business, by selling identical products to Davidson's customers, by inducing Davidson employees to work for Fluid Connectors, and by using confidential information. Davidson sought injunctive relief to prohibit Peters from continuing his competitive business.

The trial court conducted a hearing on Davidson's application for a preliminary injunction, and on August 27, 1976, the trial court entered its findings of fact and conclusions of law

---

1. IC 1971, 23-1-5-1 *et seq.* (Burns Code Ed.).

and issued the following order granting the preliminary injunction:

> "IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that defendant William E. Peters and Fluid Connectors Ltd., Inc. are hereby enjoined, pending further order of the Court:
>
> 1. For a period of one year following December 12, 1975, within the territories denominated as 493 and 496 on the map attached hereto as Exhibit 'A', either directly or indirectly, from engaging in the ownership, control, management, or operation of, or to be employed by, any business competitive with the products distributed or sold by plaintiff.
>
> 2. For a period of two years following December 12, 1975, directly or indirectly, from diverting or attempting to divert in any manner any business, customers, or suppliers of plaintiff to themselves or to any third party.
>
> 3. For a period of two years following December 12, 1975, from hiring any employee or plaintiff, or inducing or attempting to induce any employee of plaintiff to discontinue or terminate his or her employment with plaintiff.
>
> IT IS FURTHER ORDERED that the preliminary injunction granted herein shall be effective upon the filing by plaintiff of a written undertaking, with surety, in the penal sum of $50,000.00 for the payment of all damages and costs which may accrue to defendant by reason of the erroneous granting of this preliminary injunction, such bond to remain in effect until further order of this Court."

Davidson posted bond on September 20, 1976, and the preliminary injunction become effective.

Peters appeals from the trial court's interlocutory order granting the preliminary injunction assigning numerous errors for our review. The assigned errors comprise the following issues: whether on review of an interlocutory order granting a preliminary injunction, this court may examine the final merits of the case; and whether the trial court abused its discretion in granting the preliminary injunction.

We affirm.

Peters asks us to review the trial court's interlocutory order granting the preliminary injunction as if a decision on the

merits had been made. He argues that the pleadings and record sufficiently show the merits of this case, and that, therefore, a review of the final merits is necessitated.

It is well settled in Indiana that the grant or denial of a preliminary injunction rests within the sound discretion of the trial court and that we will not interfere with the exercise of that discretion unless it is shown that the trial court's action was arbitrary or constituted a clear abuse of discretion. *Rosenburg* v. *Village Shopping Center, Inc.* (1968), 251 Ind. 1, 238 N.E.2d 642. In cases of this posture, we, therefore, review the trial court's decision for abuse of discretion and do not review the final merits of the case. *Angel* v. *Behnke* (1975), 166 Ind. App. 541, 337 N.E.2d 503.

However, we will review the merits of the case if the hearing on the application for the preliminary injunction has been consolidated with the trial on the merits pursuant to Trial Rule 65 (A) (2) of the Indiana Rules of Civil Procedure. In the instant case, there is no indication in the record that the trial court contemplated or gave notice to the parties that the application hearing was to be treated as a trial on the merits.

We will not review the trial court's grant or denial of a preliminary injunction on the merits absent a clear showing that the trial court intends and the parties are aware that the hearing for the preliminary injunction is to be consolidated with the trial on the merits. Such a showing is not present here, and we, therefore, limit our review to the question of whether the trial court's action constituted a clear abuse of discretion.

Peters contends that the trial court abused its discretion in granting the preliminary injunction enforcing the covenant not to compete. Although it is not entirely clear in what respect he wishes to challenge the trial court's judgment, we have reviewed his arguments and have concluded that his at-

tack is based upon the following grounds: (a) the complaint fails to state a claim upon which relief may be granted; (b) Davidson failed to plead and prove complete performance; (c) no showing of irreparable harm was made, (d) the evidence is insufficient to support the judgment; (e) the trial court's findings of fact and conclusions of law are inconsistent, incomplete and inadequate in form and content; (f) the amount of the security bond is insufficient; and (g) the trial court improperly applied the law.

In presenting his case for a preliminary injunction, an applicant is not required to plead and prove a case which would entitle him to relief at a final hearing on the merits. The applicant's burden of proof is generally recognized to be the following:

"In our determination of whether or not the trial court committed any error in granting the temporary injunction in this case, the appellee (the plaintiff below) need only show a prima facie case for an injunction and that injury to him would be certain and irreparable if the application be denied. . . . It is not necessary that a case should be made that would entitled the plaintiff to relief in all events. It is necessary only that the pleadings and evidence be such that it makes out a case for proper investigation in equity and that the status quo be maintained pending such trial on the merits." *The Indiana Annual Conference Corporation et al.* v. *Lemon* (1956), 235 Ind. 163, 167, 131 N.E.2d 780, 782.

In the present case, Davidson applied for a preliminary injunction to enforce Peters' covenant not to compete. Employee covenants will be enforced by injunction when they are: (a) reasonably necessary for the protection of the employer's business; (b) not unreasonably restrictive of the employee's rights; and (c) not against public policy. *Miller* v. *Frankfort Bottle Gas, Inc.* (1964), 136 Ind. App. 456, 202 N.E.2d 395; *Welcome Wagon, Inc.* v. *Haschert* (1955), 125 Ind. App. 503, 127 N.E.2d 103.

Davidson, to sustain its action, was required to plead and prove a prima facie case showing irrepabale injury and a

proper case for further investigation in equity. Peters alleges that this burden was not met because Davidson's complaint failed to allege complete performance and because no showing irreparable injury was made.

The question of complete performance is subject to disposition at the final hearing on the merits. Davidson was not required to plead and prove that it had completely performed to present a case entitling it to preliminary injunctive relief. We are of the opinion that the pleadings and evidence sufficiently set forth a proper case for further investigation by a court of equity.

As to Peters' contention that Davidson failed to show irreparable injury. We note that the trial court concluded that Davidson had proved all the material allegations of its complaint, one of the allegations being irreparable injury. It is true that the trial court did not assign a dollar and cents value to Davidson's future injury. The trial court did, however, find that Peters had breached his covenant not to compete by establishing a competitive business, soliciting orders from Davidson's customers, and inducing Davidson employees to work for Fluid Connectors. We conclude that these findings adequately support the requisite element of irreparable injury.

In cases such as this, irreparable injury can not always be measured in dollars and cents. We feel that a clear action in equity for injunctive relief exists where, as here, an individual capitalizes upon his prior training and knowledge in violation of a reasonable covenant not to compete to the obvious detriment of his former employer. *See: Welcome Wagon, Inc. v. Haschert, supra.*

Peters further claims that the evidence is insufficient to support the trial court's judgment.

It is well established that this Court will not reweigh conflicting evidence on appeal. We consider only that evidence,

which tends to support the trial court's findings of fact, conclusions of law, and judgment together with all the reasonable inferences which may be drawn therefrom, and if, from that perspective, there is sufficient evidence to support the trial court's judgment, we must affirm. *Green* v. *Board of Commissioners of County of Scott* (1969), 251 Ind. 535, 242 N.E.2d 844, *Clarke Realty, Inc.* v. *Clarke* (1976), 171 Ind. App. 46, 354 N.E.2d 779.

After reviewing the entire record, we conclude that there is sufficient evidence to support the trial court's findings, conclusions, and judgment.

Peters next challenges the trial court's judgment on the grounds that the findings of fact and conclusions of law are inconsistent, incomplete and inadequate in form and content.

This allegation must fail because Peters has not shown that the trial court's findings and judgment are clearly erroneous. We may not set aside the findings and judgment unless they are clearly erroneous. Indiana Rules of Civil Procedure, TR. 52(A). We will not burden this opinion with a detailed discussion of each finding and conclusion challenged by Peters. We have read the record, and we cannot conclude that the trial court's findings, conclusions, and judgment are clearly erroneous.

Peters further argues that the trial court abused its discretion by fixing the security bond at only $50,000.00. In support of his argument, Peters points out that the only evidence concerning the amount of damages which he would incur as a result of a wrongfully issued preliminary injunction was his own testimony to the effect that he would suffer damages over $250,000.00.

Trial Rule 65(c) of the Indiana Rules of Civil Procedure provides in part, that:

"No . . . preliminary injunction shall issue except upon the giving of security by the applicant, *in such sum as the court deems proper,* for the payment of such costs and damages

as may be incurred or suffered by any party who is found to be wrongfully enjoined . . ." (Our emphasis.)

The fixing of the amount of the security bond is a discretionary function of the trial court and is reversible only for an abuse of that discretion. *Howard D. Johnson* v. *Parkside Development Corp.* (1976), 169 Ind. App. 379, 348 N.E.2d 656. The trial court, in assessing the amount of the security bond, should consider not only the estimated damages offered by the parties but its own experience and knowledge. *Howard D. Johnson* v. *Parkside Development Corp., supra.* In the case at bar, given the speculative self-serving testimony of Peters concerning the damages likely to be suffered, we conclude that the trial court, applying its own experience and knowledge, acted within the scope of its discretion in fixing the bond in the amount of $50,000.00.

It should be pointed out that if Peters ultimately wins this case and can show damages resulting from the grant of the preliminary injunction, he will not be limited in recovery to the amount of the bond. If his damages should exceed the posted security, he may recover the excess from Davidson by bringing the proper action. *Howard D. Johnson* v. *Parkside Development Corp., supra.*

Having disposed of the bulk of Peters' contentions, we now turn to the crux of this appeal. Peters maintains that the trial court erroneously granted the preliminary injunction because of its incorrect determination of the question of law discussed below.

In granting the preliminary injunction, the trial court concluded that Davidson was entitled to enforce the covenant not to compete after December 12, 1975, the day of Peters' termination. Peters cogently argues that, while Davidson had the right to enforce the covenant against Peters, this right lapsed on January 1, 1975, because the covenant's one and two year restrictive periods commenced on the merger of Avels into Davidson.

The condition determining when the anti-competitive periods commenced was Peters' employment termination. Peters' suggests that this condition occurred at the time of the merger. We disagree.

The employment agreement executed by Avels and Peters specifically provided that the rights and obligations under the agreement were assignable and transferable to Avel's successors. Following the merger, the surviving corporation, Davidson, succeeded to all the rights, powers, liabilities and obligations of the merging corporation. IC 1971, 23-1-5-5 (Burns Code Ed.). Davidson, therefore, by express contractual agreement and statutory authorization, obtained the rights to Peters' employment agreement. One of the rights inuring to Davidson under the agreement was the power to enforce the ancillary covenant not to compete.

During his employment with Avels and Davidson, Peters received specialized training and knowledge concerning the business of his employers. The purpose of this covenant not to compete was to prevent Peters from using this knowledge and training to compete in a designated area following his termination.

When Avels merged into Davidson, Avels' business activities were conducted in the same manner under the same trade name by Davidson. Following the merger, Peters continued to work for Davidson, without objection, selling the same products to the same customers in the same area. Peters continued to accept the benefits of his employment agreement and in all respects, proceeded under the agreement in the same manner as before the merger.

We recognize that covenants of this nature are to be strictly construed. *Struever* v. *Monitor Coach Co., Inc.* (1973), 156 Ind. App. 6, 294 N.E.2d 654. However, the construction proposed by Peters would defeat the clear purpose of the covenant and the reasonable expectations of the parties. Furthermore,

Peters' construction would allow to avoid the obligations of his contractual agreement by hiding behind a technicality.

We do not feel that an employee, who freely enters into an employment agreement containing an enforceable covenant not to compete, should be relieved of is contractual obligations simply because his employer's name changed following a valid merger whereby the rights to the employment agreement are transferred. This would seem to be especially true in those cases where, as here, the employee continues to accept the benefits of his agreement without objection to the merger. We, therefore, find, as did the trial court, that Peters' employment termination on December 12, 1975, constituted the condition commencing the terms of the covenant. We, further, hold that Davidson, being the rightful successor to Peters' employment agreement, was entitled to enforce the covenant following Peters' termination.

Thus, the trial court's legal interpretation is correct, and we find no abuse of discretion in the trial court's judgment.

We have found no abuse of discretion by the trial court in issuing its interlocutory order granting the preliminary injunction. The trial court's judgment must, therefore, be affirmed.

Affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 395 N.E.2d 556.